IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY MARIE POVLIK, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) ) Civil Action No. 19-1448 |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) |
| Defendant. | ) ) |

AMBROSE, Senior District Judge.

## **OPINION AND ORDER**

### **Synopsis**

Plaintiff Tammie Marie Povlik ("Povlik") seeks judicial review of the Social Security Administration's denial of her claim for Supplemental Security Income ("SSI"). She alleges a disability onset date of August 27, 2016. (R. 15)[1] The ALJ denied her claim following two hearings. At the first hearing, Povlik was unrepresented. She requested more time to find an attorney and secure her medical records. (R. 34-44) During the second hearing, Povlik appeared with counsel, and she and a vocational expert ("VE") testified. The ALJ denied benefits. Povlik then appealed. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 12 and 14. For the reasons below, the ALJ's decision is affirmed.

### **Opinion**

1. Standard of Review

---

[1] Povlik's previous application for benefits was denied on August 26, 2016. (R. 77-96.)

1

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records on which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson*, 402 U.S. at 390, 91 S. Ct. 1420. A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S. Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the

evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. The ALJ's Decision

As stated above, the ALJ denied Povlik's claim for benefits. At step one of the five step analysis, the ALJ found that Povlik had not engaged in substantial gainful activity since the alleged onset date. (R. 17) At step two, the ALJ concluded that Povlik suffers from the following severe impairments: diabetes mellitus, diabetic neuropathy, chronic pain syndrome, obesity, asthma, chronic obstructive pulmonary disease ("COPD"), obstructive sleep apnea, status-post closed fracture of the talus (right ankle), status-post left ACL reconstruction, tendonitis (peroneal and posterior tibial) (lower foot and ankle), Charot's joint (progressive degeneration of a joint) and status-post left trigger thumb release, depression, and anxiety. (R. 17-18) At step three, the ALJ concluded that Povlik does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-20) Between steps three and four, the ALJ found that Povlik has the residual functional capacity ("RFC") to perform sedentary work with certain limitations. (R. 20-25) At step four, the ALJ found that Povlik has no past relevant work. (R. 25) At the fifth step of the analysis, the ALJ concluded that, considering Povlik's age, education, work experience, and RFC, there are jobs that exist in significant numbers in

the national economy that she can perform. (R. 25-26) As such, the ALJ concluded that Povlik was not under a disability during the relevant period. (R. 26)

III. Discussion

(1) Severe Impairments

Povlik faults the ALJ for failing to consider urinary incontinence and urinary urgency as severe impairments at step two of the sequential analysis. Povlik contends that the ALJ erred "by failing to explain why Dr. Katherine Bender's assessment of urinary incontinence with urinary urgency was not adopted or rejected." ECF No. 13, p. 3, citing 20 C.F.R. §§ 404.1529c(b) and 416.929c(b). After careful consideration, I find no error. Dr. Bender's reference to urinary incontinence and urinary urgency was made in the context of a medical record. It is not an opinion. (R. 676-678) Further, Dr. Bender does not diagnose urinary incontinence or urinary urgency. Rather, she recorded Povlik's complaints of the same, performed a urinalysis, and indicated that Povlik would be contacted with any "abnormal results." (R. 678) The assessment that Dr. Bender performed on April 24, 2019 denotes assessments of chronic back pain, depression with anxiety and tear of the medial meniscus of the left knee. (R. 1175) There is no indication that she assessed urinary issues. Nor does Povlik present any evidence of functional limitations related to urinary issues.

Even assuming Povlik's position is correct, any deficiency on the ALJ's analysis is not fatal. Any error was harmless because the ALJ found in Povlik's favor at step two. *See Salles v. Commissioner of Soc. Sec.*, 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007) ("[b]ecause the ALJ found in Salle's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was

harmless."), *citing, Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Thus, I find no error.

(2) Listings

Povlik also challenges the ALJ's findings at step three of the analysis. "[T]he Listings operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled." *Harold v. Berryhill*, Civ. No. 18-09-E, 2019 WL 1359244, at * 1 n. 1 (W.D. Pa. March 26, 2019), *citing,* 20 C.F.R. 404.1525(a), 416.925(a). "Because the Listings define impairments that would prevent a claimant from performing any gainful activity – not just substantial gainful activity – the medical criteria contained in the Listings are set at a higher level than the statutory standard for disability." *Harold*, 2019 WL 1359244, at *1 n. 1 (citations omitted). Consequently, to satisfy a listing at step three, a claimant must meet all of the specified medical criteria. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Thus, a mere diagnosis is insufficient to satisfy a listing.

Povlik contends that she satisfies the requirements of Listing 1.02A.[2] This Listing addresses the major dysfunction of a joint and is:

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically accepted imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in *inability to ambulate effectively, as defined in 1.00B2b*; OR …

---

[2] Povlik does not argue that she met the requirements of Listing 1.02B – that she had a major dysfunction of a joint characterized by gross anatomical deformity and chronic pain … with involvement of one major peripheral joint in each upper extremity resulting in inability to perform fine and gross movements effectively. *See* ECF Docket No. 13, p. 19.

5

Listing 1.02 (emphasis added). Listing 1.00B2b, in turn, defines an inability to ambulate effectively as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities." (emphasis added) Examples of ineffective ambulation under 1.00B2b, include "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." Listing 1.00B2b also defines the "inability to perform fine and gross movements effectively" as "an extreme loss of function of *both* upper extremities." (emphasis added). Such examples include, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle paper, and the inability to place files in a file cabinet at or above waist height. Listing 1.00B2b.

      Povlik has not pointed to any evidence showing that she satisfies these criteria. She bears the burden in this regard. *Sullivan*, 493 U.S. at 531. Povlik might require the use of a cane which satisfies Listing 1.00J, but that, alone, does not meet the definition set forth in 1.00B2b of an inability to ambulate ineffectively, because the use of the cane does not limit the functioning of both of her upper extremities. *See Pearson v. Saul*, Civ. No. , 2020 WL 1248199, at * 8 (D. Del. March 16, 2020) ("the Regulations state that the

inability to walk without the use of a walker or crutches or two canes constitutes an inability to ambulate effectively, *Id.* at 1.00(B)(2)(b)(2); the use of one cane to walk is not sufficient."), *citing, Jones v. Berryhill*, 691 Fed. App'x. 252, 255 (4th Cir. 2017); *Bullock v. Comm'r. of Soc. Sec.*, 277 Fed. App'x. 325, 328 (5th Cir. 2007); *McCleave v. Colvin*, 2014 WL 4060030, at *9 (M.D. Pa. Aug. 15, 2014). The use of a cane, an antalgic gait, and a painful limp are insufficient. *Mckeon v. Comm'r. of Soc. Sec.*, Civ. No. 18-12739, 2019 WL 3887553, at * 4 (D.N.J. Aug. 19, 2019).

Thus, the ALJ's conclusion that Povlik does not have objective findings of the necessary severity to meet or medically equal Listing 1.02 is supported by substantial evidence of record. (R. 18)

(3) Medical Opinions

Although somewhat difficult to discern, Povlik seems to object to the weight the ALJ afforded certain of the medical opinions. Because Povlik applied for benefits after March 27, 2017, the "treating source rule" no longer applies. In other words, the ALJ does not have to give "specific evidentiary weight, including controlling weight, to any medical opinion." 20 C.F.R. § 416.920c(a). "Supportability," and "consistency," are the most important factors in evaluating medical opinions , together with the frequency and length of treatment, and the specialization a medical source may have. 20 C.F.R. § 416.920c(c).

To the extent that Povlik contends that the ALJ erred in disregarding "the treating physician opinion of Dr. Katherine Bender in diagnosing Plaintiff with urinary incontinence with urinary urgency," I reject her contentions. As stated above, Dr. Bender did not issue a medical opinion in which she diagnosed Povlik with any such condition

or articulate any functional limitations arising therefrom. Povlik conflates a medical note or treatment note with an opinion.[3]

Povlik also questions why the ALJ rejected Dr. Rabinovich's findings that she has an impaired gait, can only ambulate eight steps without a cane, cannot balance, cannot squat 50% because of ankle pain, and has an antalgic and painful gait. *See* ECF Docket No. 13, p. 23. Contrary to Povlik's suggestions, the ALJ found Dr. Rabinovich's assessment to be supported by the medical record and "partially persuasive." (R. 24) The RFC reflects Rabinovich's conclusion that Povlik can sit up to six hours in an eight-hour workday and can stand up to two hours. (R. 24, 618) Indeed, the RFC requires that Povlik "must have the ability to use a cane occasionally for ambulation." (R. 20) The ALJ also accommodated ankle pain by crafting an RFC which provides "sit / stand" alternatives and which precludes her from operating foot controls with her right or left foot. (R. 20) In terms of balance and squatting, the ALJ also considered Dr. Fox's opinion. Dr. Fox concluded that Povlik could occasionally balance. (R. 24) Dr. Fox also explained that x-rays of Povlik's right ankle were normal, showing that it has healed and that her pain is expected to improve with time. Fox concluded that the need for a cane is not well-supported by the medical evidence. (R. 108-109) The ALJ found this portion of Fox's opinion "more persuasive." (R. 25)[4] Consequently, Povlik has not convinced me that the ALJ erred in assessing the medical opinions of record.

(4) Residual Functional Capacity

---

[3] Povlik also references "opinions" by Dr. Navalgund and Dr. Olegario. (ECF No. 13, p. 25-26) Again, these are not "opinions" these are medical records and / or treatment notes. See 20 C.F.R. § 416.920b(c).
[4] The ALJ determined that Fox did not adequately account for Povlik's respiratory condition and accordingly limited her exposure to environmental irritants. (R. 25)

Finally, Povlik challenges the formulation of the RFC. According to Povlik, the RFC is deficient because it did not account for all of her impairments and because the hypothetical questions the ALJ posed to the VE did not refer to all of her impairments. Her arguments are unpersuasive. As to hypertension, the ALJ explained that there was no evidence of significant limitations relating to hypertension and Povlik fails to identify any. The ALJ explained that he accounted for Povlik's obesity and back pain by limiting her to sedentary work with postural limitations and the use of a cane and the sit / stand option. (R. 20-25) With respect to respiratory issues, the ALJ detailed Povlik's successful response to treatment with the CPAP machine and stated that her examinations yielded "normal" clear lungs bilaterally without rhonchi, rales, or wheezing. (R. 23) Even so, the ALJ fashioned the RFC so that Povlik would have access to an oxygen machine for occasional use. (R. 20) Povlik has identified no evidence requiring additional modifications. Because a hypothetical question must include all of a claimant's "credibly established limitations," the ALJ did not err in declining to include the hypotheticals the impairments which Povlik identifies above. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) Consequently, I find no basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMIE MARIE POVLIK )<br>    Plaintiff, )<br> )<br>-vs- )<br> )<br>ANDREW M. SAUL, )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br> )<br>    Defendant. ) | Civil Action No. 19-1448 |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 5th day of November, 2020, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 12) is DENIED and the Defendant's Motion for Summary Judgment (Docket No. 14) is GRANTED. It is further ORDERED that the ALJ's decision is AFFIRMED. This case shall be marked "Closed" forthwith.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose
United States Senior District Judge

10